UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81187-CIV-HURLEY

**EASTPOINTE CONDOMINIUM I**
**ASSOCIATION, INC.,**
    **Plaintiff,**

vs.

**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**
    **Defendant.**
_____/

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This case involves an alleged breach of the duty to defend under a "Non-Profit Management and Organization Liability Insurance Policy" issued by defendant Travelers Casualty & Surety Company of America ("Travelers") to plaintiff Eastpointe Condominium I Association, Inc. ("the Association").

The case is now before the court upon the parties' cross-motions for summary judgment [DE# 15, 29]. For reasons stated below, the court concludes that the subject claim against the Association is an excluded loss under the "tangible property" exclusion of the Travelers policy, defeating coverage and relieving Travelers of any obligation to defend the underlying claim against its insured.

**Facts**

The Association obtained insurance liability coverage under two different policies. First, it obtained a Commercial General Liability (CGL) Policy from QBE Insurance Corporation ("QBE") which provided coverage for property damage ["QBE Policy"]. Second, it obtained a Non-Profit Management and Organization Liability Insurance Policy, or Directors & Officers Liability Policy,

from Travelers Casualty and Surety Company of America ("Travelers") which covered "loss ... incurred by the [Association] as the result of any claim ... made against the {Association] ... for a Wrongful Act." ["Travelers Policy"] [DE# 15-2] .

The Travelers Policy defines a "wrongful act" at Section II. S. ("Definitions") as follows:

Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured organization or by one or more Inured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

In turn, Section IV of the Travelers Policy, as amended by policy endorsement, expressly excludes coverage for claims against the Association "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property," defined to include "construction defects," "mold, toxic mold, spores, mildew, fungus or wet or dry rot." [1]

During the period when both policies were in place, a unit owner, Lynn Bursten, as Trustee of the Lynn Kelvin Bursten Revocable Living Trust ["Bursten"], sued the Association for failure to adequately maintain and repair the roof and air conditioning system of the condominium building before, between and after Hurricanes Jeanne and Frances made landfall in South Florida in October, 2004.

---

[1]The full text of the "tangible property" exclusion provides:

The insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the insureds:

for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot, or the supervision of actual construction, manufacturing or assembly of tangible property.

In her original state court complaint, filed December 23, 2004, Bursten alleged that the Association's failure to maintain and repair the property constituted negligence, breach of contract, and breach of fiduciary duty, all based on an alleged breach of the Association's duties under the Declaration of Condominium to maintain, repair and/or replace the roof and air conditioning units located on the roof of the condominium property. As a consequence, Bursten alleged that the condominium building sustained severe water intrusion during the Hurricanes, causing pervasive mold and other damage to Bursten's unit and its contents.

The Association promptly tendered the Bursten complaint to QBE and Travelers. Following tender of suit papers, on January 25, 2005, Travelers issued formal notice denying coverage and disclaiming any duty to defend pursuant to the "tangible damage" exclusion of the Travelers Policy. The Association then retained personal counsel, Attorney Daniel Bram, to defend its interests in the Bursten lawsuit.

At the same time, QBE, the Association's commercial general liability carrier, accepted defense of the Bursten suit under a reservation of rights, and provided and paid for the Association's defense against all claims, designating Attorney Scott Silver as defense counsel. Despite the appearance of Attorney Silver in the litigation, the Association continued its retention of Attorney Bram, apparently operating under the incorrect assumption that QBE was only defending on the negligence claim, leaving it exposed on the breach of fiduciary duty and breach of contract claims. However, it is undisputed that QBE defended the Association against all claims lodged in the Bursten suit, and made no statement in its reservation of rights letter which suggested otherwise.

Over a year later, on June 6, 2006, Bursten amended her complaint, supplementing her original allegations of property damage with new allegations of economic loss. More specifically,

while the amended complaint still lodged claims of negligence, breach of fiduciary duty and breach of contract, this time Bursten added allegations of fiscal mismanagement, asserting that the Association failed to obtain competitive bids and failed to select a qualified contractor for the restoration and remediation of the building; failed to contract for for remediation and restoration of the building at a reasonable cost and failed to require the selected contractor to post a sufficient performance bond with regard to remediation and restoration of the building.

The Association never tendered a copy of the Amended Complaint to Travelers, nor did it ever otherwise notify Travelers of the fact or substance of the amendment.

In January, 2008, the Bursten suit was resolved with entry of a defense verdict on all claims.

In September, 2008, the Association filed this declaratory judgment and breach of contract suit, seeking to establish Travelers' duty to defend under the subject policy of directors and officers liability insurance. As damages, it seeks to recoup $250,000.00 in attorneys' fees paid to Attorney Bram as personal counsel in its defense of the underlying Bursten suit.

**Standard of Review**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

The non-moving party "[m]ay not rely merely on allegations or denials in its own pleading; rather, its response.... must set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A "mere scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party. *Walker v Darby*, 911 F.2d 1573 (11th Cir. 1990), citing *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Conclusory, uncorroborated allegations by a plaintiff in an affidavit or

4

deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion. *Earley v Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

In this case, the material facts are not in dispute. The court is left to resolve whether the allegations in the Bursten complaint fall within the coverage of the Travelers policy, a policy construction question particularly well suited for determination by summary judgment. *ABC Distributing, Inc. v Lumbermens Mut. Ins. Co.*, 646 F.2d 207 (11th Cir. 1981); *Technical Coating Applicators, Inc. v U.S. Fidelity & Guar. Co.,* 157 F.3d 843 (11th Cir. 1998).

## Discussion

### A. Standard for Determining Duty to Defend

Florida law governs the duty to defend in this diversity action. *Hartford Ace & Indemnity Co. v Beaver,* 466 F.3d 1289 (11th Cir. 2006). Under Florida law, the duty to defend is distinct from and broader than the duty to indemnify the insured for damages. *LaFarge Corp. v Travelers Indemnity Co.,* 118 F.3d 1511 (11th Cir. 1997). An insurer's duty to defend is based entirely "on the facts and legal theories alleged in the pleadings and claims against the insured." *James River Ins. Co. v Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008). It does not hinge on the true facts that gave rise to the cause of action against the insured, the insured's version of those facts, or the insured's defenses to the underlying complaint. *State Farm Fire & Cas. Co. v Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).

Where the complaint contains multiple claims, some falling within and some falling outside the scope of coverage, the insurer is required to defend the entire suit. *Trizec Properties, Inc. v Biltmore Const. Co., Inc.,* 767 F.2d 810 (11th Cir. 1985)*; Tropical Park, Inc. v U.S. Fidelity & Guaranty Co.,* 357 So.2d 253 (Fla. 3d DCA 1978).

All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured. As long as the complaint alleges facts which create potential coverage under the policy, a duty to defend is triggered. *Trizec Properties, supra*.

On the other hand, if the pleadings show the applicability of a clear and unambiguous policy exclusion, the insurer has no duty to defend. *Andrews v Capacity Ins. Co.,* 687 So.2d 366 (Fla. 4th DCA 1997*); Hagen v Aetna Cas & Sur. Co.,* 675 So.2d 963 (Fla. 5th DCA 1996*); Travelers Ins. Co. v Emery,* 579 So.2d 798 (Fla. 2st DCA 1991).

### B.  The Travelers Policy

Thus, in determining Travelers' duty to defend, the court looks only to the allegations contained within the four corners of the Bursten complaint. If the facts alleged in that pleading fairly bring the claim within the scope of the policy coverage, Travelers owes a duty to defend, regardless of the merits of the underlying claim. *Vector Products, Inc. v Hartford Fire Ins. Co.*, 397 F.3d 1316 (11th Cir. 2005)(Fla law); *Higgins v State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2004).

Ordinarily, the duty to defend is determined by the most recent amended pleading, not the original pleading. 14 Couch on Insurance, §200:20, (3d Ed. 2009*). See e.g. State Farm Fire & Casualty Co. v Steinberg*, 393 F.3d 1226 (11th Cr. 2004), citing *Amerisure Ins. Co. v Gold Coast Marine Distributors, Inc.,* 771 So.2d 579 (Fla. 4th DCA 2000). However, this presumes that the insured has forwarded the amended pleading to the insurer, or that the insurer is at least on notice of the fact of an amendment.

The Ninth Circuit, applying California law, has held that the duty to defend is based on the complaint and facts known to the insurer at the time of tender: Once the insurer determines there is no potential for coverage, it does not have a continuing duty to investigate or monitor the lawsuit

to see if the claimant later made some new claim not found in the original suit. *The Upper Deck Co., LLC v Federal Ins. Co.*, 358 F.3d 608 (9th Cir. 2004)(Cal. law). With no Florida law directly addressing this point, the court adopts this approach here as an equitable and logical application of notice of claim requirements typically found in liability policies of insurance.

For example at Section V.B., "Notice," the Travelers Policy at issue here requires the insured to "give to the Insurer written notice of any [] claim as soon as practicable ...." and to "give the Insurer such information and cooperation as it may reasonably require."

Under Florida law, an insurer is relieved of all liability under an insurance policy if the insurer has been prejudiced by the insured's failure to comply with a notice of lawsuit provision. *Tiedtke v Fidelity & Cas. Co. of New York*, 222 So. 2d 206 (Fla. 1969); *Perez v Public Service Mutual Ins. Co.,* 755 So.2d 168 (Fla. 3d DCA 2000). Where breach of the notice requirement is demonstrated, a rebuttable presumption of prejudice to the insurer arises, shifting the burden to the insured to prove that the insurer was not prejudiced by the failure to give timely notice. *See Alabama Farm Bureau Mutual Casualty Ins. Co. v Harris*, 197 So.2d 567 (Fla. 3d DCA 1967), and cases cited infra. See also VanHaaren v State Farm Mut. Auto Ins. Co.*, 989 F.2d 1 (1st Cir. 1993).

In this case, after Travelers denied coverage based on the specific allegations of Bursten's original complaint, it had no continuing duty to monitor that litigation for possible amendments potentially bringing the Bursten's claims within the scope of coverage. Rather, the Association was obliged, under the policy's notice of claim requirement, to give Travelers notice of the amended claims "as soon as practicable" if it sought to bring Bursten's new allegations of economic loss outside the scope of Traveler's prior denial of coverage. *See e.g. National Railroad Passenger Corp v Steadfast Ins. Co.*, 2009 WL 562610 (S.D.N.Y. 2009).

7

It did not provide such notice, triggering a rebuttable presumption of prejudice to Travelers. As the Association proffers no evidence to rebut that presumption, the scope of Travelers' duty to defend is necessarily defined by the allegations of the original Bursten complaint, which the court now lays against the policy terms to determine whether the "tangible property" exclusion clearly and unambiguously excludes coverage. *Reliance Ins Co. v Royal Motorcar Corp.*, 534 So.2d 922 (Fla. 4th DCA 1988).

The original Bursten complaint alleges that as a result of the Association's failure to properly maintain, repair and replace the roof and air conditioning unit of the subject condominium building before, between and following Hurricanes Frances and Jeanne, "water infiltrated the skin of the building, causing mold to grow and spread within the walls of the Apartment and the contents of the Apartment, rendering the Apartment inhabitable" [Para. 11] as well as water damage to the wall framing, air conditioning ducts and the electrical system [Para. 8]. Bursten asserts she consequently suffered loss of use of her unit, forcing her to return three months advanced rent ($12,000) from a tenant who had planned to take occupancy on January 1, 2005 [Para. 16], and incurred substantial out-of-pocket costs for repairs and mold remediation work done in effort to mitigate damages, expenses which the Association has failed or refused to reimburse.  [Para. 14, 18].

Bursten makes no other allegations against the Association in her original complaint. Thus, the sole basis for the underlying dispute is alleged damage to the building skin, wall framing, air conditioning ducts, electrical system, walls and apartment units comprising the condominium property, including extensive leaking and mold damage and resulting loss of use of the owner's apartment.

Laying these allegations against the terms of the Travelers policy, the issue presented is

8

whether Bursten's claim "arises out of" damage or destruction to "tangible property."  The court concludes, under the plain language of the policy, that it does. [2]

The Florida Supreme Court has held, interpreting a policy exclusion in a CGL policy, that the phrase "arising out of" is broader in meaning than the term "caused by," and means "originating from," having its origin in, growing out of ... flowing from, incident to or having connection with." *Taurus Holdings Inc. v United States Fidelity and Guaranty Co.*, 913 So.2d 528 (Fla. 2005), citing *Hagen v Aetna Casualty & Surety Co.*,. 675 So.2d 963 (Fla. 5th DCA 1996).  While it requires "some causal connection or relationship," it does not require proximate cause in the legal sense. *See e.g. Stevens v Firemen's Fund Ins. Co.,* 375 F.3d 464 (6th Cir. 2004)(applying Florida law) (arising out of" language requires only "but for" causation).

The policy at issue here expressly excludes coverage for claims "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property." The Bursten complaint alleges mold damage, contents damage and loss of use of Bursten's unit as a result of water infiltration caused by Hurricanes Frances and Jeanne. This claim plainly has its origin in, grows out of, flows from or originates from damage to tangible property. But for the alleged water intrusion

---

[2] Under Florida law, insurance contracts are construed according to their plain meaning. If a policy provision is clear and unambiguous, it must be enforced according to its terms, whether it is a basic policy provision or an exclusionary provision. *Hagen v Aetna Cas & Sur. Co.*, 675 So.2d 963 (Fla. 5th DCA 1996). On other hand, if the relevant language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the policy is considered ambiguous, and courts will apply a construction in favor of the insured and strictly against the drafter. *Swire Pacific Holdings, Inc. v Zurich Ins. Co.*, 845 So.2d 161 (Fla. 2003).

However, courts should not strain to find ambiguity. Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to ordinary rules of construction is the rule on ambiguity in play.  If there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning. *Sphinx Int'l Inc. v National Union Fire Ins. Co of Pittsburgh, Pa.,* 412 F.3d 1224, 1227-28 (11th Cir. 2005).

and damage to the building skin, there would be no Bursten claim for mold, structural damage and loss of use of the Bursten unit. This meets the definition of simple "but for" causation.

Because the tangible property exclusion thus clearly and unambiguously applies to Bursten's claims-- -which directly arose out of water infiltration of the building skin -- Travelers had no duty to defend the Association against the claims described in Bursten's original complaint. *See e.g. Federal Ins. Co v Everest National Ins. Co.* 257 S.W.3d 771 (Tex. App.-Dallas 2008); *Board of Mangers of Yardarm Condominium II v Federal Ins. Co.,* 247 A.D. 2d 499, 669 N.Y.S. 2d 332 (N. Y. A. D. 2d Dept. 1998). *But see Lumbermens Mutual Cas. Co v Dadeland Cove Section Homeowner's Ass'n* 2007 WL 2979828 (S.D. Fla. 2007).

It is accordingly **ORDERED AND ADJUDGED**:

1. The plaintiff's motion for summary judgment [DE # 29] is **DENIED.**

2. The defendant's motion for summary judgment [DE# 15] is **GRANTED**. Pursuant to Rule 58, the court shall enter final summary judgment in favor of defendant by separate order of court.

3. The defendant's motion to amend affirmative defenses [DE# 52] is **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida this 14th day of October, 2009.

Daniel T. K. Hurley
United States District Judge

cc. all counsel

10